UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| LIONEL MONSANTO<br>Plaintiff, | )<br>)<br>)<br>) |
| v. | )    C.A. No. 16-cv-147-JJM-PAS |
| STATE OF RHODE ISLAND, et al.,<br>Defendants. | )<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

The Third-Party Defendants[1] ("Defendants") move to dismiss the Amended Third-Party Complaint brought against them by former Rhode Island State Trooper James Donnelly-Taylor. ECF No. 88. The Court sets forth below its reasons for GRANTING the Motion to Dismiss.

*Factual Background*

Trooper Donnelly-Taylor arrested Lionel Monsanto after a traffic stop and brought him to the State Police cell block. According to Trooper Donnelly-Taylor,[2] Mr. Monsanto was "belligerent and verbally abusive throughout the traffic stop and

---

[1] The Defendants are Governor Gina M. Raimondo, in her official capacity; R.I. Attorney General Peter F. Neronha, in his official capacity; former R.I. Attorney General Peter F. Kilmartin, in his individual capacity; former R.I. State Police Colonel Steven G. O'Donnell in his individual capacity; and R.I. State Police Colonel James M. Manni, in his official capacity.

[2] The Court takes the plausible facts alleged by Trooper Donnelly-Taylor in his Amended Third-Party Complaint (ECF No. 86) as true for purposes of this Motion to Dismiss, though both Plaintiff Lionel Monsanto and the Defendants vehemently contest them.

while he was being transported to the barracks for booking." ECF No. 86 at ¶ 81. Mr. Monsanto's "behavior continued throughout the booking process." *Id.* at ¶ 82. "After booking, Trooper Donnelly-Taylor escorted [Mr.] Monsanto to a cell" during which Mr. Monsanto "repeatedly pulled his arm and body away from the trooper and repeatedly stated that he would not go into a cell willingly." *Id.* at ¶ 83-84. Mr. Monsanto "exhibited multiple behaviors over a prolonged period of time that escalated the level of threat he posed to the trooper and others." *Id.* at ¶ 87. "Upon passing through the cell door, Monsanto . . . slammed his elbow into the trooper's upper-arm, just below the shoulder, in an apparent attempt to strike the trooper's face with his elbow." *Id.* at ¶ 88. The trooper then "subdue[d Mr.] Monsanto, who was not handcuffed or otherwise restrained in any way, [to] prevent any further threat of harm." *Id.* at ¶ 90. Trooper Donnelly-Taylor then close-fist punched Mr. Monsanto six times. All the relevant conduct was caught on video-tape.

Trooper Donnelly-Taylor filed charges against Mr. Monsanto including for assault. *Id.* at ¶ 92. A month later, the Rhode Island Attorney General's office dismissed the charges against Mr. Monsanto. *Id.* at ¶ 96.

A state grand jury indicted Trooper Donnelly-Taylor for assaulting Mr. Monsanto. Trooper Donnelly-Taylor pleaded *nolo contendere* to the assault, admitting to the indictment's underlying facts and the use of excessive force. ECF No. 88-2 at 2-3. The judge "place[d] the case on file . . . [and ordered the Trooper to perform] 25 hours of community service." *Id.* at 6.

Mr. Monsanto filed this suit against the State and Trooper Donnelly-Taylor for violating his federal civil rights by using excessive force and for state law claims. Rhode Island Attorney General Peter Kilmartin refused to defend or indemnify Trooper Donnelly-Taylor individually for this incident, relying on Rhode Island Gen. Laws § 9-31-9, which states that "[t]he attorney general may refuse to defend an action referred to in § 9-31-8 if he or she determines that: (1) The act or omission was not within the scope of employment; (2) The act or the failure to act was because of actual fraud, willful misconduct, or actual malice. . . ."

The Rhode Island Troopers' Association filed a grievance and for arbitration, alleging that Attorney General Kilmartin violated the Collective Bargaining Agreement ("CBA") with the Troopers' Association by not supplying Trooper Donnelly-Taylor with a defense and indemnity. Attorney General Kilmartin, in response to the grievance and arbitration request, filed a declaratory and injunctive relief complaint in the Rhode Island Superior Court seeking a determination that his decision to deny Trooper Donnelly-Taylor a defense and indemnification was proper and not an arbitrable matter. The Rhode Island Superior Court granted Attorney General Kilmartin's relief, and the Rhode Island Supreme Court affirmed.

*Procedural Background*

Mr. Monsanto sued the State, the State Treasurer (in his official capacity only), Trooper Donnelly-Taylor (individually and officially), Trooper Gregory Palmer (individually and officially), and Colonel Steven G. O'Donnell (individually and officially). ECF No. 26. Trooper Donnelly-Taylor answered the complaint and filed

3

a Third-Party Complaint and cross-claims against his co-Defendants and adding claims against Governor Gina M. Raimondo (officially) and Attorney General Kilmartin (individually and officially). ECF No. 86.

Mr. Monsanto dismissed his claims with prejudice against all the Defendants. ECF No. 81. The Defendants have now moved to dismiss Trooper Donnelly-Taylor's claims against them. ECF No. 88.

*Standard of Review*

To survive a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), Trooper Donnelly-Taylor must present facts that make his claim plausible on its face. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To determine plausibility, the court must first review the complaint and separate conclusory legal allegations from allegations of fact. *See Rodriguez-Reyes v. Molina-Rodriguez*, 711 F.3d 49, 53 (1st Cir. 2013). Next, the court must consider whether the remaining factual allegations give rise to a plausible claim of relief. *See id.*

To state a plausible claim, a complaint need not detail factual allegations, but must recite facts enough at least to "raise a right to relief above the speculative level...." *Twombly*, 550 U.S. at 555. A pleading that offers "labels and conclusions" or "a formulative recitation of the elements of a cause of action" will not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor does a complaint suffice if it tenders "naked assertion[s] devoid of further factual enhancement." *Id.* (quoting *Twombly*, 550 U.S. at 557); *see also Soto-Torres v. Fraticelli*, 654 F.2d 153, 159 (1st Cir. 2011)

4

(holding that combined allegations, taken as true, "must state a plausible, not a merely conceivable, case for relief.").

*Analysis*

The Defendants move to dismiss the Third-Party Complaint under collateral estoppel, claiming that five of the eight counts were resolved by the Rhode Island Supreme Court's opinion in *R.I. Troopers' Association*. They also move for dismissal based on absolute and qualified immunity; that defamation is not properly pleaded; and that the complaint fails to state a prima facie case of a violation of 42 U.S.C. § 1985(2).

1. Resolution by *R.I. Troopers' Association*–Counts III, IV, V, VII, and VIII

The Defendants assert that the Court should dismiss each of the following counts based on the Rhode Island Supreme Court ruling in *R.I. Troopers' Association*:

- Count III (Tortious Interference with Contract–ECF No. 86 at ¶ 152) alleges that Attorney General Kilmartin and Colonel O'Donnell "tortiously prevented Trooper Donnelly-Taylor from enjoying the benefits of. . . the CBA" when Attorney General Kilmartin refused to supply him with a defense or indemnification;

- Count IV (Violation of 42 U.S.C. § 1983 Against Defendant O'Donnell–*Id.* at ¶ 157) is based on a property right "on the terms of the CBA;"

- Count V (Violation of 42 U.S.C. § 1985(2) Against Defendant O'Donnell–*Id.* at ¶ 164) alleges a denial of indemnification "to which he is entitled;"

5

- Count VII (Violation of 42 U.S.C. § 1983 Against Defendant Kilmartin–*Id.* at ¶ 176) alleges that Trooper Donnelly-Taylor, "by virtue of the terms of the CBA ... has a property right in his contractual employment," and

- Count VIII (Violation of 42 U.S.C. § 1985(2) against Defendant Kilmartin–*Id.* at ¶ 183) alleges that Attorney General Kilmartin inappropriately "den[ied him] indemnification to which he is entitled."

In *R.I. Troopers' Association*, the Rhode Island Supreme Court spoke definitively about both the powers of the Attorney General under Rhode Island Gen. Laws § 9-31-9 and the application of those powers in Trooper Donnelly-Taylor's case. Under that section, "the Attorney General is vested with the authority to refuse to defend an action on behalf of a state employee if the Attorney General determines that (1) the state employee's conduct was not within the scope of employment; or (2) the state employee engaged in willful misconduct or actual malice." *R.I. Troopers' Ass'n*, 187 A.3d at 1103. The court looked at the language of the Governmental Tort Liability Act vesting discretion in the Attorney General as to matters of defense and indemnity along with the CBA provision under which the Troopers' Association brought the grievance. *Id.* at 1101. Deferring to his discretion and after reviewing "the record [that] include[s] a video recording that captured Trooper [Donnelly-]Taylor's assault upon [Mr.] Monsanto," *id.* at 1104, the court stated that it was "of the opinion that the information before the Attorney General supports the decision that Trooper [Donnelly-]Taylor's conduct fell outside the scope of his employment as

a Rhode Island State Trooper and that a jury could conclude that he acted willfully." *Id.*

The Rhode Island Supreme Court made clear that Attorney General Kilmartin was within his discretionary authority to determine that Trooper Donnelly-Taylor acted willfully in using excessive force on Mr. Monsanto and thus was not entitled to a defense and or to indemnification. The court also ruled that the CBA gave no rights to the Trooper that would override Attorney General Kilmartin's statutory authority to make this decision.

*Collateral estoppel*

The Defendants argue that collateral estoppel bars the relitigation of Counts III, IV, V, VII, and VIII because the Rhode Island Supreme Court decided the underlining bases for these same claims against Trooper Donnelly-Taylor. "Collateral estoppel makes conclusive in a subsequent action on a different claim the determination of particular issues actually litigated in a prior action as long as [1] the issues are identical, [2] the prior judgment was final, and [3] the individual who is the subject of the estoppel was a party or in privity with a party in the prior action." *Cole v. Charron*, 477 A.2d 959, 961 (R.I. 1984); *Foster-Glocester Reg'l Sch. Comm. v. Bd. of Review*, 854 A.2d 1008, 1014 (R.I. 2004).[3]

---

[3] "[U]nder the Full Faith and Credit Clause of the United States Constitution and the federal full faith and credit statute implementing that constitutional provision, federal courts considering whether to give preclusive effect to state court judgments must apply the State's law of collateral estoppel." *Vazquez v. Metro. Dade Cty.*, 968 F.2d 1101, 1106 (11th Cir. 1992).

All three elements of collateral estoppel are met here. First, the parties are in privity. The State is in privity with itself. *See Huntley v. State*, 63 A.3d 526, 531 (R.I. 2013) ("[W]here defendants are all members of state government . . ., they are clearly in privity with the named defendant State of Rhode Island."). Trooper Donnelly-Taylor is in privity with his union, the Rhode Island Troopers' Association, who represented his interests in state court. *See Lennon v. Dacomed Corp.*, 901 A.2d 582, 591 (R.I. 2006) ("Parties are in privity when there is a commonality of interest between the two entities and when they sufficiently represent each other's interests.") (internal quotations omitted); *see also Foster-Glocester Reg'l Sch. Comm.*, 854 A.2d at 1015 (finding that union member was in privity with his union where union represented his interests at arbitration). Second, a state supreme court judgment is no doubt a final judgment on the merits. *See Torromeo v. Fremont, NH*, 438 F.3d 113, 117 (1st Cir. 2006) (noting that state court decision on the merits was a final judgment with preclusive effect). And third, the issue before this Court—whether the Attorney General can refuse to indemnify and defend Trooper Donnelly-Taylor—is exactly what the Rhode Island Superior and Supreme Courts decided. *R.I. Troopers' Ass'n*, 187 A.3d at 1100–05.

Although cloaked in different causes of action, the Court finds that Trooper Donnelly-Taylor's claims for tortious interference of contract and § 1983 and § 1985 violations[4] are an attempt to relitigate the propriety of the Attorney General's

---

[4] Trooper Donnelly-Taylor also alleges that the Defendants violated his right to due process under 42 U.S.C. § 1983 "when they pressured him to plead *nolo contendere.*" ECF No. 86 at ¶ 164. This allegation has no legal foundation as the

8

discretionary decision not to defend or indemnify him. His union had a full and fair opportunity to litigate the issue before the Rhode Island state courts. *See Wiggins v. Rhode Island*, 326 F. Supp. 2d 297, 303 (D.R.I. 2004) ("In order to use the doctrine of collateral estoppel defensively, . . . it must be clear that the party opposing its usage had a full and fair opportunity to litigate an issue in a prior lawsuit.") (internal quotation omitted). The Rhode Island Supreme Court decided the issue with finality and collateral estoppel prevents it from being re-litigated here. Five counts of Trooper Donnelly-Taylor's Third-Party Complaint–Counts III, IV, V, VII, and VIII– are dismissed.

### 2. Qualified Immunity–Counts I and II

Trooper Donnelly-Taylor accuses the Defendants of violating his due process rights. ECF No. 86 at ¶¶ 131-48. The Defendants claim qualified immunity.[5] Under the qualified immunity doctrine, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). To invoke qualified immunity, a plaintiff must prove the following:

---

United States Supreme Court in *Heck v. Humphrey*, 512 U.S. 477, 486 (1994) held that "[a] claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983." Because Trooper Donnelly-Taylor's claims result from a valid and unchallenged state court conviction after a nolo plea, his § 1983 claim based on this allegation alone fails.

[5] "[W]e repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991).

> First, the plaintiff must establish a violation of a constitutional right. Second, the Court must determine whether the right was clearly established at the time of the violation; that is, whether the public official had fair warning. Finally, the Court must determine whether a reasonable and similarly-situated official would have understood that his or her conduct violated that right.

*Hopkins v. Rhode Island*, 491 F. Supp. 2d 266, 273 (D.R.I. 2007) (citing *Savard v. Rhode Island*, 338 F.3d 23, 27 (1st Cir. 2003)).

The doctrine of qualified immunity bars these claims. Nothing in Trooper Donnelly-Taylor's Third-Party Complaint evidences objectively unreasonable conduct by Defendants in handling this matter.[6] The touchstone of the qualified immunity doctrine is the "objective reasonableness" standard. *Malley v. Briggs*, 475 U.S. 335, 344 (1986). As both Trooper Donnelly-Taylor's Third-Party Complaint and *R.I. Troopers' Association* make clear, the Defendants had video-tape footage of Trooper Donnelly-Taylor's assault on Mr. Monsanto. They also had access to Trooper Donnelly-Taylor's plea colloquy, in which he knowingly waived his constitutional rights and admitted to the indictment's underlying facts. ECF No. 88-2 at 3-4. After reviewing the evidence, the Rhode Island Supreme Court concluded that the Attorney General's discretionary decision not to defend or indemnify was proper and "that a jury could conclude that he acted willfully." *R.I. Troopers' Ass'n*, 187 A.3d at 1104.

Moreover, in light of this evidence, the Defendants alleged recommendation to Trooper Donnelly-Taylor that a plea of *nolo contendre* would be a better outcome than

---

[6] While the Defendants challenge whether Trooper Donnelly-Taylor could state a constitutional violation of a clearly established right, the Court will assume that for purposes of this analysis.

taking the case to trial does not constitute objectively unreasonable conduct. Contrary to Trooper Donnelly-Taylor's assertion, relying on the video-tape of the assault instead of resorting to use-of-force experts was not objectively unreasonable. "The protective umbrella of the qualified immunity doctrine does not require absolute accuracy nor does it require an officer to exhaust all possible avenues of investigation." *Menebhi v. Mattos*, 183 F. Supp. 2d 490, 502 (D.R.I. 2002). "Indeed, the mere fact that further investigation might have revealed a contrary conclusion is not sufficient to render [the defendant's] conduct unreasonable." *Id.* at 501–02.

Declining to indemnify and defend a state employee—who pleaded to a criminal charge—was not objectively unreasonable under the facts and circumstances of this case. *See R.I. Troopers' Ass'n*, 187 A.3d at 1104. Trooper Donnelly-Taylor's Third-Party Complaint does not overcome Defendants' right to qualified immunity and therefore the Court dismisses Counts I and II.

3. Defamation–Count VI

Count VI alleges defamation against Colonel O'Donnell and Attorney General Kilmartin. Trooper Donnelly-Taylor's defamation claim fails because he does not allege a prima facie claim.

"A plaintiff in a defamation case carries a substantial burden." *Alves v. Hometown Newspapers, Inc.*, 857 A.2d 743, 750 (R.I. 2004). To bring a prima facie claim for defamation as a private person, the plaintiff must prove these elements: "(a) a false and defamatory statement concerning another; (b) an unprivileged publication to a third party; (c) fault amounting to at least negligence on the part of the publisher;

11

and (d) damages, unless the statement is actionable irrespective of special harm." *Bossian v. Anderson*, 69 A.3d 869, 878 (R.I. 2013) (quoting *Marcil v. Kells*, 936 A.2d 208, 212 (R.I. 2007)). Yet when a public official like Trooper Donnelly-Taylor[7] brings an action for defamation, proof of mere negligence is insufficient; the public official must instead prove "that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false or not." *Cullen v. Auclair*, 809 A.2d 1107, 1110 (R.I. 2002) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964)).

"[T]he question of whether a particular statement or conduct alleged to be defamatory is, in fact, defamatory, is a question of law for the court to decide." *Alves*, 857 A.2d at 750. The Court finds that Trooper Donnelly-Taylor's Third-Party Complaint does not allege a prima facie claim. First, he does not set forth which statements were defamatory.[8] He merely notes that Colonel O'Donnell and Attorney General Kilmartin made defamatory remarks "concerning Trooper Donnelly-Taylor." ECF No. 86 at ¶ 168. The Defendants are left to guess what specific statements he is referring to, when they occurred, and in what context they were made. Therefore, the Third-Party Complaint does not meet its pleading burden.

---

[7] The First Circuit has recognized that police officers are public officials for a defamation action and must prove "by clear and convincing evidence that [the declarant] made the false statement with actual malice." *See McGunigle v. City of Quincy*, 835 F.3d 192, 206 (1st Cir. 2016) (quoting *Rotkiewicz v. Sadowsky*, 431 Mass. 748, 730 N.E.2d 282, 289 (2000)).

[8] The Court notes that paragraph 63 is expressly under the sub-heading "Facts Relevant Specifically to Counts I-II" and the defamation claim is Count VI.

Second, the Third-Party Complaint does not specify any allegedly defamatory statements made by Colonel O'Donnell. And the only statement attributed to Attorney General Kilmartin was made during a news interview: he allegedly said that "Committing the crime of assault upon a prisoner–or anyone–is outside the course and scope of the duties of a state trooper, and the taxpayers should not have to defend or pay for the criminal actions of Donnelly-Taylor." *Id.* at ¶ 63. Trooper Donnelly-Taylor does not allege that this statement was made with actual malice, or knowledge that it was false, or with reckless disregard of whether it was false or not. *See Cullen*, 809 A.2d at 1110. Moreover, this statement is clearly Attorney General Kilmartin's individual opinion; it communicates his view on Trooper Donnelly-Taylor's conduct and his assessment about applying the state law on indemnity and defense. Opinions are afforded deference and often lie outside the realm of defamation. *See Healey v. New England Newspapers, Inc.*, 555 A.2d 321, 324 (R.I. 1989) (finding that opinions may be actionable as defamatory if and only if "it implies the allegation of undisclosed defamatory facts as the basis for the opinion.") (quoting 3 Restatement (Second) *Torts* § 566 at 170)). The allegation of this single statement fails to state a claim for defamation.

*Conclusion*

Because the Court finds that the Rhode Island Supreme Court's opinion in *R.I. Troopers' Association* covered the same claims in Counts III, IV, V, VII, and VIII, collateral estoppel bars them here and they are DISMISSED. Counts I and II are DISMISSED on qualified immunity grounds. Count VI is DISMISSED for failure to

state a claim. The Court GRANTS Third-Party Defendants' Motion to Dismiss. ECF No. 88.

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
United States District Judge

May 21, 2019